IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00528-RJC-DSC

| | |
|---|---|
| MICHAEL JOHNSON and WILLARD TURPIN, individually and as representatives of a class of similarly situated persons, and on behalf of the Duke Energy Retirement Savings Plan, | )<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| DUKE ENERGY CORPORATION, DUKE ENERGY BENEFITS COMMITTEE, and JOHN AND JANE DOES 1-30, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM AND RECOMMENDATION AND ORDER**

**THIS MATTER** is before the Court on Defendants' "Motion to Dismiss" (document #26) filed November 9, 2020, Plaintiffs' "Amended Complaint …" (document #28) filed November 23, 2020, "Defendants' Motion to Dismiss the Amended Complaint" (document #30) filed December 18, 2020 and the parties' briefs and exhibits. Plaintiffs filed the Amended Complaint as a matter of right.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

**I. FACTUAL BACKGROUND**

Plaintiffs Michael Johnson and Willard Turpin, individually and as representatives of a class of participants and beneficiaries of the Duke Energy Retirement Savings Plan, bring this

action against Duke Energy Corporation, Duke Energy Benefits Committee, and John and Jane Does 1-30 for breach of duty of prudence and failure to monitor fiduciaries under the Employee Retirement Income Security Act of 1974.

Accepting the factual allegations of the Amended Complaint as true, Duke Energy offers a 401(k) defined contribution plan qualified under 26 U.S.C. § 401. It is maintained pursuant to a written instrument called the Plan Document. From 2014 – 2019, the Plan had between 33,000 and 39,000 participants. During this period, the Plan held $6.7 to $9.2 billion in assets. The Plan is among the largest .01% of all defined contribution plans in the country. With this size comes significant bargaining power to negotiate lower fees for services.

Duke Energy is the Plan's sponsor. It retains ultimate decision-making authority for the Plan. Duke Energy exercises discretionary authority to control management and administration of the Plan and disposition of the Plan assets. Duke Energy formed the Duke Energy Benefits Committee to assist with administering the Plan. The Committee selects and monitors the Plan's service providers and investments. The Committee exercises authority and control over management of the Plan's assets, making it a fiduciary. Duke Energy maintains authority to retain, appoint, and remove Plan fiduciaries.

Record keeping vendors compete for business by offering their best price. Plan record keepers track each participant's investments, provide account statements, and maintain a website where participants can obtain information about and make changes to their accounts. Defendants have retained Fidelity Investments Institutional Operations Company to provide record keeping services for the Plan since 2009. From 2014 – 2018, Plan participants paid between $58 and $67 per year for record keeping services. Smaller plans with less negotiating power obtained far lower rates for similar services during the same period. Fidelity recently stipulated that it would offer

record keeping services to large plans with assets over one billion dollars for between $14 - $21 per participant in 2014. In 2019, Fidelity's record keeping fees for the Plan fell to around $21 per participant.

Defendants have also retained Financial Engines Advisors LLC to provide managed account services since 2010. Financial Engines provides an opt-in service that develops custom portfolios from the Plan's investment options. From 2014 – 2018, Plan participants paid a flat fee of .50% of the assets in their account. During this period, other plans offered lower prices in a tiered system for managed account services. This industry has a standard of tiered pricing. In 2019, the Plan's fees fell to a flat rate of 0.33%.

Plaintiffs contend that they were charged excessive record keeping fees as a result of their participation in the Plan and excessive managed account fees as a result of their enrollment in the Plan's managed account service. Collectively, Plaintiffs suffered millions in losses.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true); see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not

'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 F. App'x 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### III. DISCUSSION

**A. Breach of Fiduciary Duty**

ERISA requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]" 29 U.S.C.A § 1104(a)(1)(B) (Westlaw through P.L. 116-259). "ERISA imposes high standards of fiduciary duty on those responsible for the administration of employee benefit plans and the investment and disposal of plan assets. Tatum v. RJR Pension Inv. Committee, 761 F.3d 346, 355 (4th Cir. 2014). To determine a breach of a fiduciary duty of prudence, the court must ask "whether the fiduciary engaged in a reasoned decision[-]making process, consistent with that of a 'prudent man acting in [a] like capacity.'" Id. at 356 (Quoting DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 420 (4th Cir. 2007)).  This determination "depend[s] on the character and aim of the particular plan and decision at issue and the circumstances prevailing at the time." DeFelice, 497 F.3d at 420.

ERISA plaintiffs may sufficiently plead facts indirectly showing unlawful behavior, so long as the facts "give the defendant fair notice of what the claim is and the grounds upon which it rests." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 595 (8th Cir. 2009) (quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007)). The Eighth Circuit has explained:

> No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information. If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer. These considerations counsel careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief.

Id. at 598.

Plaintiffs have sufficiently stated a claim for breach of fiduciary duty. They allege that Defendants used Fidelity for record keeping services since 2009. Plan participants paid $58-$67 for record keeping services from 2014-2018, while similar plans paid less for comparable services. Fidelity stipulated that it would have provided comparable services to similarly sized plans for $14-21 since 2014. Defendants failed to renegotiate with Fidelity or solicit competitive bids until 2019, and the Plan's per-participant fees remained steady while fees across the industry dropped. See Doc. 28 ¶¶ 34 – 42. Taken in the light most favorable to Plaintiffs and under the totality of the circumstances, these allegations raise a plausible inference that Defendants breached their fiduciary duty.

For those and the other reasons stated in Plaintiffs' brief, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiffs' breach of fiduciary duty claim be denied.

### B. Duke Energy's Liability

ERISA designates a fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C.A. § 1002(21)(A) (Westlaw through P.L. 116-259). "[A] plan sponsor . . . become[s] a fiduciary under the definition if (that is, "to the extent") it retains or exercises "any discretionary authority" over the management or administration of a plan." Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465 (4th Cir. 1996) (internal citations omitted). The Department of Labor has advised:

> Q: What are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to these appointments?
>
> A: At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards and satisfies the needs of the plan.

29 C.F.R § 2509.75-8 at FR-17; see also Coyne & Delany Co., 98 F.3d at 1465-66.

The Amended Complaint alleges that Duke Energy "has ultimate decision-making authority with respect to the Plan and the management and administration of the Plan and its investments." Doc. 28 ¶ 19. Further, "[t]he Committee has the duty to select, monitor, or evaluate, and modify the Plan's investment, subject to the ultimate oversight and discretion of Duke Energy." Id. at ¶ 22. Plaintiffs have plausibly alleged that Duke Energy is liable for the fiduciary breach at issue.

Plaintiffs have also satisfied their burden to allege a breach of the duty to monitor. Plaintiffs have alleged that Defendants "fail[ed] to monitor and evaluate the performance of its appointees or have a system in place for doing so, [stood] idly by as the Plan suffered significant losses as a

result of its appointees' imprudent actions and omission with respect to the Plan[.]" Id. at 79. This Court has recently found similar allegations to be sufficient. See Reetz v. Lowe's Companies, Inc., 2019 WL 2489758, at *5 (W.D.N.C. Feb.14, 2019), memorandum and recommendation adopted, 2019 WL 4233616 (W.D.N.C. Sept. 6, 2019) (rejecting argument that Lowe's was not a fiduciary where it appointed committee members that were directly responsible for monitoring plan service providers).

For those and the other reasons stated in Plaintiffs' brief, the undersigned respectfully recommends that Defendants' Motion to Dismiss the Amended Complaint be denied.

## IV. ORDER

**IT IS ORDERED** that Defendants' "Motion to Dismiss" (document #26) is administratively **DENIED** without prejudice as moot.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Motion to Dismiss the Amended Complaint" (document #30) be **DENIED**.

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising

such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED AND RECOMMENDED**.

Signed: March 4, 2021

David S. Cayer
United States Magistrate Judge